[No. 6397. Decided October 19, 1907.]

THE STATE OF WASHINGTON, *Appellant*, v. CHARLES W. AMES, *Respondent*.[1]

PILOTS—REGULATION—POWER OF STATE. The legislature has power to regulate pilotage of the public waters within the boundaries of the state so far as relates to vessels engaged in strictly foreign commerce, since Congress has not attempted to regulate the same.

STATUTES—VALIDITY OF PORTION. The invalidity of a provision for a penalty for acts made misdemeanors does not affect the balance of the act, as the misdemeanors are punishable under the general statute, Bal. Code, § § 6776, 7435.

STATUTES—TITLE—SUBJECTS INCLUDED—PILOTAGE. An act entitled "to establish pilot regulations" in certain waters, is broad enough to include provisions relating to a penalty for violation of the statute.

CONSTITUTIONAL LAW—CLASS LEGISLATION—PILOTS. An act requiring an applicant for a pilot's license to be a qualified voter does not unlawfully discriminate between citizens of the state.

PILOTS—STATUTES—CONSTRUCTION. The pilotage law, Bal. Code, §§ 3216-3243, applies to vessels propelled by steam as well as sailing vessels.

SAME. The pilotage law, Bal. Code, §§ 3216-3243, as amended by Laws 1901, p. 17, is not objectionable as indefinite or as prescribing different penalties for the same offense.

Appeal from a judgment of the superior court for Jefferson county, Hatch, J., entered March 23, 1906, upon sustaining a demurrer to an information charging the defendant with violation of the state pilotage laws. Reversed.

*U. D. Gnagey*, for appellant.

FULLERTON, J.—On February 20, 1906, the prosecuting attorney of Jefferson county filed an information against the respondent accusing him of violating the pilotage laws of the

[1]Reported in 92 Pac. 137.

state of Washington; the charging part of the information being as follows:

"The said Charles W. Ames, within one year preceding the filing of this information, in the state of Washington, in and upon the waters of the Straits of Juan de Fuca and Puget Sound, on her voyage inward and outward bound, under continuous contract for hire, the steamship 'Craighall' did wrongfully and unlawfully pilot to Port Townsend, Washington, from Port Townsend to Tacoma, and from Tacoma to Port Townsend, the said steamship then and there being a foreign vessel, to wit, the British steamship 'Craighall,' without first obtaining from the duly authorized, appointed, qualified and acting pilot commissioners for the different ports on the Straits of Fuca, Puget Sound and their branches, a valid license so to do, and without holding such license, the said Charles W. Ames then and there not being the master of the said vessel, and the said pilot commissioners for the different ports on the Straits of Fuca, Puget Sound and their branches, duly appointed, qualified and acting as aforesaid, then and now residing at Port Townsend, Jefferson county, Washington, contrary to the statutes in such cases made and provided and against the peace and dignity of the state of Washington."

To this information the respondent demurred, which demurrer the trial judge sustained, and, on the refusal of the state to plead further, discharged the defendant and dismissed the action.

We have not been favored with a brief on the part of the respondent, and consequently are not advised as to which of the several grounds upon which the information was attacked in the court below he deems controlling, hence we shall notice only those that seem to us to be the more plausible. Briefly stated, they are the following: (1) That the legislature of the state of Washington has no power to regulate pilotage on the public waters within its boundaries, since the power to so regulate is within the exclusive jurisdiction of Congress; (2) that the pilotage act is insufficient and void, since it embraces subjects not expressed in its title; (3) that

the act makes an unconstitutional discrimination between citizens of the state; (4) that the law is too indefinite to be carried into execution, since it provides different penalties for the same offense; and (5) that the act applies only to the pilotage of sailing vessels, not those propelled by steam.

Taking up these contentions in their order, the first to be noticed is the claim that Congress has exclusive jurisdiction to regulate pilotage within the public waters of the United States. This contention is true only in a limited sense. Congress undoubtedly has paramount jurisdiction to regulate pilotage in the public waters, and in so far as it has sought to exercise that jurisdiction, its acts upon the subject are supreme and supersede all state laws. But Congress has not attempted to regulate the entire subject of pilotage. So far it has confined itself to the regulation of pilotage as to vessels engaged in the coastwise or interior commerce of the country, making no provision at all as to pilotage of vessels engaged in strictly foreign commerce. The states, therefore, are free to enact laws regulating the pilotage of vessels engaged in foreign commerce, and the statute in question, in so far as it does this, conflicts with no Federal statute and is to that extent valid. It may be that it purports also to regulate pilotage on coastwise vessels. If it does, it is only inoperative to that extent. It is a valid law as to all its other provisions. *Huus v. New York etc. Steamship Co.*, 182 U. S. 392, 21 Sup. Ct. 827, 45 L. Ed. 1147. As the vessel mentioned in the information was engaged in foreign commerce the statute was applicable to her condition, and the respondent violated its provisions when he acted as her pilot without procuring the required license.

The title of the pilotage act is as follows: "An act to establish pilot regulations for the Straits of Juan de Fuca, Puget Sound, and all American waters pertaining thereto." The act contained a penal clause, and it is thought that this title is insufficient to sustain it, rendering the whole act void.

But if it be true that the title is not broad enough to include the provisions relating to the penalty, the result contended for would not follow. The penal clause only would be void, and the act would stand in the same category as other statutes prohibiting the doing of particular acts, but providing no penalty for their violation; the doing of such acts being prohibited by the general statutes as misdemeanors, punishable by imprisonment in the county jail for not more than one year, or by fine not exceeding five hundred dollars, or by both such fine and imprisonment. Bal. Code, §§ 6776, 7435 (P. C. §§ 1547, 1548). But we think the title sufficient to include the penalty. The general rule under similar constitutional provisions is that a title such as the one in question is sufficiently broad to include a penalty. *Plumb v. Christie*, 103 Ga. 686, 30 S. C. 759, 42 L. R. A. 181; *Brown v. State*, 73 Ga. 38; *Rosenbloom v. State*, 64 Neb. 342, 89 N. W. 1053, 57 L. R. A. 922; *State v. Bailey*, 157 Ind. 324, 61 N. E. 730, 59 L. R. A. 435; *State v. Karstendiek*, 49 La. Ann. 1621, 22 South. 845; *Holton v. State*, 28 Fla. 303, 9 South. 716; *People v. Kelly*, 99 Mich. 82, 57 N. W. 1090; *State v. Burgdoerfer*, 107 Mo. 1, 17 S. W. 646, 14 L. R. A. 846; *State ex rel. Harris v. Laughlin*, 75 Mo. 358; *In re Pratt*, 19 Colo. 138, 34 Pac. 680; *State v. Shaw*, 22 Ore. 287, 29 Pac. 1028.

The trial judge seems to have thought that the case of *State ex rel. Henry v. Macdonald*, 25 Wash. 122, 64 Pac. 912, from this court, lays down a contrary doctrine. But that case was rested on the doctrine that two distinct subjects were attempted to be introduced in one act, which not only were not, but could not be, included in the title. In other words, the act would have been unconstitutional had the title contained a reference to the misdemeanors therein created and made punishable. It was not intended to announce the doctrine that the legislature cannot declare an act to be a misdemeanor and provide a penalty for its violation without specially mentioning the penalty in the title of the act.

The act requires the applicant for a pilot's license to be an American citizen and legal voter of this state, and to have certain qualifications to be ascertained by the board of pilot commissioners. It is contended that the requirement that the applicant be a qualified voter unlawfully discriminates between citizens of the state. Such a discrimination, however, is not unconstitutional. *State ex rel. Griffith v. Newland*, 37 Wash. 428, 79 Pac. 983.

The penalty for a violation of the act is found in the amendatory act of February 25, 1901. Laws 1901, page 17. If any incongruity in this respect theretofore existed, it was set at rest by this amendment.

The claim that the act applies only to sailing vessels is without foundation. All vessels are included in its terms. See Bal. Code, §§ 3216-3243 (P. C. §§ 6976-7003).

Since this appeal was taken the legislature has repealed the act upon which the prosecution was founded, and we deem it proper to add that this fact does not discontinue the cause. Inasmuch as the prosecution was pending at the time of the repeal, the right to continue the prosecution is saved by the act of June 13, 1901 (Laws 1901, Extraordinary Session, p. 13).

The judgment appealed from is reversed, and remanded with instructions to reinstate the case and overrule the demurrer.

HADLEY, C. J., DUNBAR, ROOT, MOUNT, RUDKIN, and CROW, JJ., concur.